(No. 17477.—Judgment reversed; order set aside.)
F. V. ROY *et al.* Appellants, *vs.* THE ILLINOIS COMMERCE COMMISSION *ex rel.* The North Shore Connecting Railroad, Appellee.

*Opinion filed October 28, 1926.*

1. PUBLIC UTILITIES—*the Commerce Commission has power to order re-location of railroad.* While by the original location of its road a railroad company exhausts its power to re-locate any part of its line, the Public Utilities act confers upon the Commerce Commission power to order a re-location, and such order is sufficient authority for the railroad company to make the re-location where it makes proper application therefor.

2. SAME—*order of commission must be for convenience of public and not of individual.* Individuals or corporations may determine for themselves what their interests demand, but the convenience and necessity required to support an order of the Commerce Commission are that of the public and not of any individual or number of individuals.

3. SAME—*when certificate of convenience and necessity for additional railroad is not authorized.* Where a railroad company desires to change the location of a track connecting two different branches of its road for the purpose of giving safer and faster suburban service it has the right to present a petition to the Commerce Commission for that purpose, but it cannot be authorized, through the nominal organization of another company, to construct an additional track over the proposed new route, as it is not consistent with the purpose of the Public Utilities act that a nominal corporation be granted a certificate of convenience and necessity to operate a public utility for the sole benefit of another utility.

4. SAME—*proposed utility must show financial ability to render service.* Upon every application for a certificate of convenience and necessity the ability of the corporation to furnish adequate and satisfactory service is a question essential to be determined, and every corporation applying for such certificate must show its intention and ability, financial and otherwise, to render the service it asks authority to undertake.

DEYOUNG, J., took no part.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

William Lister, Corporation Counsel, and Sims, Welch, Godman & Stransky, (F. J. Stransky, of counsel,) for appellants.

Goodrich, Vincent & Bradley, Gardner, Foote, Burns & Morrow, and McKinney, Lynde & Grear, (Ralph R. Bradley, Addison L. Gardner, and Hayes McKinney, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The North Shore Connecting Railroad was organized in 1921 with a nominal capital stock of $50,000, under the act for the incorporation of railroad companies, for the purpose stated in its articles of incorporation of building a railroad about one mile and a quarter long from a point on the right of way of the Chicago, North Shore and Milwaukee Railroad in the city of Evanston to another point on the right of way of the same railroad in the adjoining village of Wilmette. The North Shore Connecting Railroad was organized by the Chicago, North Shore and Milwaukee Railroad for the purposes of the latter, and the board of directors located the right of way of the railroad by resolutions adopted on September 30 and November 16,. 1921, and thereupon, without issuing or having authority to issue any stock, filed a petition with the Illinois Commerce Commission stating that the purpose of this line of railroad was to join and unite the tracks of the Chicago, North Shore and Milwaukee Railroad in Evanston with the tracks of the same railroad in Wilmette by another route, and asking for permission to proceed with the construction of the railroad and for a certificate of convenience and necessity. The city of Evanston, certain incorporated improvement associations and a number of individuals, property owners and residents appeared and objected to the granting of the certificate, but the commission, after a hearing, made an order that the certificate of convenience

and necessity issue, from which an appeal was taken to the superior court of Cook county, which affirmed the decree, and the appellants prayed and were allowed a further appeal to this court.

The railroad which the appellee was organized to build is intended to be used as a part of the Chicago, North Shore and Milwaukee Railroad. The assistant to the president of the latter company testified that the purpose of the proceedings before the commission was to get permission to locate a new line through Wilmette and Evanston and to enable the Chicago, North Shore and Milwaukee Railroad to get a better route for its operation of through and local traffic and to cease operation of its trains in Greenleaf avenue. The Chicago, North Shore and Milwaukee Railroad is a double-track electric railroad about ninety miles long, operating between Chicago and Milwaukee. Its cars use the tracks of the Northwestern Elevated railroad between Wilmette and Chicago, connecting with them about half way between Laurel and Oakwood avenues, in Wilmette. Going north from that point its tracks cross Laurel and Linden avenues and turn west into Greenleaf avenue for about eight blocks. The tracks then continue north approximately parallel to the right of way of the Chicago and Northwestern railroad. The new railroad designed to be built by the appellee is intended to leave the Northwestern Elevated railroad tracks in Evanston several blocks south of Oakwood avenue and run west on the south side of Jenks street, in Evanston, to the right of way of the Chicago and Northwestern Railroad Company, thence north parallel with that railroad to Greenleaf avenue, in Wilmette, where it will again connect with the Chicago, North Shore and Milwaukee Railroad, this line being about four blocks shorter than the present line of the Chicago, North Shore and Milwaukee Railroad. The Chicago, North Shore and Milwaukee Railroad operates two hundred and fifteen passenger and fourteen merchandise dispatch trains a day.

There are three classes of passenger trains: limited trains, which make few stops; express trains, which make all the stops made by limited trains and a few extra stops; and local trains, which make all stops, in general, at every street intersection. About 13,500,000 passengers were carried by these trains in 1921, about one-third of whom were carried in local cars. The road was built about twenty-five or thirty years ago, and originally served a local rather than a through trade and was of slow speed. It has become a high-speed road serving through rather than local trade. Greenleaf avenue has become a thickly built-up residence district. The new route will save about three minutes of operating time for fast trains and four minutes for local trains. There is considerable local street car traffic along Greenleaf avenue, which the North Shore now serves.

With reference to the operation of the railroad along Greenleaf avenue, the commission recited in its order that it appears that Greenleaf avenue, in the village of Wilmette, is eighty feet in width, with a pavement forty feet wide between curbs, and is occupied by the Chicago, North Shore and Milwaukee Railroad for approximately four-fifths of a mile, and that over that distance the street may be classed as approximately one-third a business street and two-thirds a residential street; that the railroad maintains a double track, and without a double track it could not render satisfactory service to the public, and that the owners of property, residents and persons engaged in business along Greenleaf avenue own a large number of automobiles and frequently park them along the curbs on both sides of the street; that Greenleaf avenue is a street much used by vehicles and pedestrians, and that portion of the street partially occupied by the railroad is intersected by eight other streets, all of which are much used by pedestrians and vehicles, and that the operation of a high-speed electric railroad in Greenleaf avenue is dangerous and impracticable, and should, if possible, be eliminated; that at present all

the trains of the Chicago, North Shore and Milwaukee Railroad are operated over these tracks; that the Chicago, North Shore and Milwaukee Railroad enters upon Greenleaf avenue one block north of Linden avenue and operates westerly upon Greenleaf avenue for a distance of four-fifths of a mile, then turns to the north; that following its organization in 1916 it eliminated longitudinal street operations through various municipalities, including Lake Forest and the city of Highland Park, so that in the operation of its railroad lines between Evanston and Milwaukee it now occupies for longitudinal operation less than three miles of street, including the fourth-fifths of a mile on Greenleaf avenue. Longitudinal operation on residential streets by interurban railroads compels a restriction of operation which is detrimental to the service and creates an accident hazard which should, if possible, be eliminated, for it is unsafe not only for the people on the trains but for people walking on the streets or traveling in vehicles on the streets. The order found "that the longitudinal operation of a high-speed interurban electric railroad on Greenleaf avenue, village of Wilmette, is an unsafe and hazardous operation and should be eliminated and a safer means for high-speed operation be provided; that the route as set forth in the petition of the North Shore Connecting Railroad will furnish a shorter and safer means of transportation, both in the operation of the railroad and to persons traveling on the highways of the State across which it may operate; that there is a public convenience and necessity for the operation of a railroad as set forth in the petition of the North Shore Connecting Railroad, and that the public convenience and necessity require the granting of the prayer of the petitioner as prayed for in the petition filed herein." The commission then directed that the certificate of convenience and necessity issue.

The order went on the theory that the operation by the Chicago, North Shore and Milwaukee Railroad along

Greenleaf avenue was hazardous to the public and incon-
venient for the Chicago, North Shore and Milwaukee Rail-
road and should therefore be eliminated; that the operation
along the new route would be safer to the public, shorter
and more convenient to the Chicago, North Shore and Mil-
waukee Railroad and its patrons, and because of those
things the certificate should be issued to the appellee. In
the consideration of the petition, in the introduction of evi-
dence and in the findings and order the case was treated as
if the petition were the petition of the Chicago, North Shore
and Milwaukee Railroad and the public convenience and
necessity which were considered were such as arose from
the operation of the new road and route as a part of the
line of the Chicago, North Shore and Milwaukee Railroad.

The certificate of convenience and necessity is based
upon paragraph 8 of the order quoted above, in which is
epitomized the conclusion of the whole matter that the
longitudinal operation on Greenleaf avenue is unsafe and
hazardous and should be eliminated and a safer means for
high-speed operation be provided; that the route as set forth
in the petition of the North Shore Connecting Railroad will
furnish a shorter and safer means of transportation, both
in the operation of the railroad and to persons traveling on
the highways of the State across which it may operate. If
this had been a hearing upon an application by the Chicago,
North Shore and Milwaukee Railroad for a re-location of
that part of its line between a certain point between Jenks
street extended and Chancellor street in Evanston and a
point near the west end of Greenleaf avenue in Wilmette,
or a hearing upon a complaint made to the commission or
upon its own motion, the findings in paragraph 8 might be
a proper basis for an order requiring a re-location of its
road by the Chicago, North Shore and Milwaukee Railroad.
While by the original location of its road the railroad com-
pany had exhausted its power in this respect and could not
re-locate any part of its line, (*Cairo, Vincennes and Chi-*

*cago Railway Co.* v. *Woodyard*, 226 Ill. 331,) the Public Utilities act has conferred upon the Commerce Commission power to order a re-location, and such order is sufficient authority for the company to make the re-location ordered. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh*, 278 Ill. 609; *Public Service Co.* v. *Recktenwald*, 290 id. 314.) However, this was not such a hearing. This was a petition for another railroad company to construct a new railroad from one point to another on an existing railroad. It clearly appears that no public interest will be served by the construction and operation of the proposed railroad.

The material finding of the commission requiring the issue of the certificate was that the operation of high-speed trains on Greenleaf avenue by the Chicago, North Shore and Milwaukee Railroad was unsafe and hazardous and should be eliminated and safer means for high speed provided. Therefore the commission decided and certified that public convenience and necessity required that the North Shore Connecting Railroad build a new railroad from one point to another on the Chicago, North Shore and Milwaukee Railroad. The cost of constructing the new railroad, including the acquisition of the right of way, the evidence shows will be $340,000. There is no traffic for it to handle and there is no public for it to serve except that which is now effectively served by the Chicago, North Shore and Milwaukee Railroad. In every application of this kind the primary and controlling interest to be considered is the public interest. Individuals or corporations may determine for themselves what their interests demand, but the convenience and necessity required to support an order of the commission is that of the public and not of any individual or number of individuals. (*Choate* v. *Commerce Com.* 309 Ill. 248; *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* id. 87.) Clearly, no public interest will be served by the building of this new railroad. It will simply result in two railroads between two points a

mile and a quarter apart in these neighboring municipalities. That is the only effect of this order. The dangerous condition in Greenleaf avenue will not be removed, because the double-track railroad will still remain there. No reason for the organization or existence of the North Shore Connecting Railroad appears in the record or is suggested in the argument. It has no assets. It was testified that about seventy per cent of the right of way for the proposed new road had been acquired and negotiations for the further purchase of right of way are pending, but the title of none of this right of way is in the North Shore Connecting Railroad. It is not authorized to purchase any right of way or to transact any other business, and the transaction of no business in its own name and for its own benefit is contemplated. It is a mere convenience of the Chicago, North Shore and Milwaukee Railroad, devised for the purpose of being used by the latter company in securing another route for its railroad between the two points designated in Evanston and Wilmette. What is the particular reason for the Chicago, North Shore and Milwaukee Railroad seeking to secure another route in this indirect method its counsel have not seen fit to state. It is not consistent with the purpose of the Public Utilities act to bring under public control, for the common good, property applied to the public use in which the public has an interest, that a corporation nominally organized for independent service as a public utility but having actually no other object than to act for and under the control of another, should be granted a certificate of public convenience and necessity for the operation of a public utility. If the Chicago, North Shore and Milwaukee Railroad deems it for the public convenience and interest that its line in Evanston and Wilmette should be re-located, it has the right to present a petition to the Commerce Commission for that purpose in its own name, but the North Shore Connecting Railroad has no such right, and the Chicago, North Shore and Milwaukee

Railroad has no right to resort to the subterfuge of presenting a petition in the name of the North Shore Connecting Railroad for the construction of a new railroad for the purpose of re-locating the line of the Chicago, North Shore and Milwaukee Railroad.

The Public Utilities act provides that no franchise, license, permit or right to own, operate, manage or control any public utility, except common carriers engaged in interstate commerce and except telegraph or telephone companies engaged in interstate commerce, shall be granted or transferred to any grantee or transferee other than a corporation duly incorporated under the laws of this State; that the power of public utilities to issue stocks, bonds, notes and other evidences of indebtedness and to create liens on their property is a special privilege, the right of supervision, regulation, restriction and control of which is vested in the State and shall be exercised by the Commerce Commission, and that a public utility may issue stocks, bonds and notes upon the order of the commission; that the commission shall have power to establish a uniform system of accounts to be kept by public utilities showing all sources of income, the amounts due and received from each source, the amounts expended and due for each purpose, to require the keeping of such accounts as will adequately reflect depreciation, obsolescence and the progress of the arts, and provide for the examination and audit of all accounts. The officers and employees of the commission have authority, under the direction of the commission, to inspect and examine any and all books, accounts, papers, records and memoranda kept by public utilities, and every public utility is required to furnish the commission, each year, annual reports of its business, containing all the required information for the period of twelve months ending on June 30, or on December 31, in each year, as the commission may prescribe. It is intended that the commission shall at all times be informed as to the financial and mate-

rial condition of each public utility in the State. It needs no argument to show that the Commerce Commission should not grant a certificate of convenience and necessity unless it is made to appear that the corporation to which it is granted is shown to have the ability to serve the public interest in connection with such utility. The law contemplates an actual, thorough supervision, in the manner authorized by the Public Utilities act, of every corporation engaged in conducting a public utility in this State, to the end that continuous, adequate, uniform and satisfactory service shall be rendered to the public at reasonable rates and without discrimination by corporations of whose condition, financial and business standing and relations the Commerce Commission is constantly advised in the manner provided by law. Therefore every corporation applying for a certificate of convenience and necessity must show both its intention and ability, financial and otherwise, to render the service which it asks for authority to undertake. The ability of the corporation to furnish adequate and satisfactory service is a question essential to be determined upon every application for a certificate of convenience and necessity. (*Chicago Motor Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320; *Superior Motor Bus Co.* v. *Community Motor Bus Co.* 320 id. 175.) No evidence was introduced of the financial ability of the North Shore Connecting Railroad, and there was therefore no basis in the evidence for the order of the commission.

The judgment of the superior court is reversed and the order of the Commerce Commission is set aside.

*Judgment reversed and order set aside.*

Mr. JUSTICE DEYOUNG took no part in this decision.