(No. 21597.—

THE MOLINE CONSUMERS COMPANY, Appellant, *vs.* THE ILLINOIS COMMERCE COMMISSION *ex rel.* The Chicago, Burlington and Quincy Railroad Company *et al.* Appellees.

*Opinion filed June 16, 1933—Rehearing denied October 4, 1933.*

BENJAMIN S. BELL, for appellant.

J. A. KNOWLTON, RUSSELL B. JAMES, and WALTER R. McFARLAND, (BRUCE SCOTT, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal by the Moline Consumers Company from a judgment of the circuit court of LaSalle county. confirming an order of the Illinois Commerce Commission denying the prayer of a complaint filed before it by appellant.

On April 29, 1929, appellant filed a complaint before. the commission alleging that a rate of fifty cents a ton for the transportation of sand and gravel from its plant to points within the switching district of Ottawa, Illinois, as published and charged by the Illinois Traction, Inc., and the Chicago, Burlington and Quincy Railroad Company, was unjust, excessive, unreasonable and unduly prejudicial, in violation of sections 32 and 38 of the act concerning public utilities, and was also unlawful, in violation of section 40 of that act. The complaint was later amended by making the Chicago and Illinois Valley Railroad Company, the successor of Illinois Traction, Inc., a party defendant, herein referred to as the traction company. The prayer of the complaint was for the establishment of a just, reasonable and lawful rate in place of the one complained of, and for reparation for the unlawful transportation charges collected under the alleged unjust and unlawful rate. An answer in the nature of a general denial was filed by the Chicago, Burlington and Quincy Railroad Company, herein called the Burlington. After a hearing the commission entered its order denying the prayer of the complaint, and the order, on appeal, was confirmed by the circuit court.

Appellant is engaged in the mining and production of sand and gravel and the selling and shipping thereof to various places in this State. Its plant and pit are located on a line of the traction company at a point about five miles from the railroad station of Ottawa and about three and

two-tenths miles from Siberling switch, where the traction company has interchange facilities with the Burlington and the Chicago, Rock Island and Pacific Railway Company, which will be designated as the Rock Island. The traction company does not operate cars within the city limits of Ottawa, having no franchise from the city to do so. While in the complaint it is alleged that the plant and pit of appellant are a short distance outside the defined limits of the Ottawa switching district, the commission found, and appellant in its brief states, that its plant and pit were within that switching district when the complaint was filed. The rate complained of is a joint through rate of fifty cents a ton for transportation of sand and gravel in carload lots of fifty tons to the car-load ($25 a car-load) from the plant and pit of appellant by the traction company to Siberling switch and from that switch by the Burlington to points within the Ottawa switching district.

The evidence shows that the published rate for transportation of sand and gravel from the plant and pit of appellant to Siberling switch is $6.30 a car-load, and that the published rate of the Burlington for transportation from that switch to any point also within that district is thirty-eight cents a ton (or $19 a car-load) on traffic originating within the Ottawa switching district, and twenty-five cents a ton (or $12.50 a car-load) on traffic from without that switching district. It is also shown by the evidence that the Burlington published rates of switching charges between certain named firms or plants, tweny-nine in number, within the Ottawa switching district and the Rock Island; that the switching rate so published to or from twenty-four of these firms or plants is $2.70 a car on traffic to or from points on the Rock Island outside the switching district and $3.15 a car on traffic moving between two points within the switching district. The commission found, and the evidence showed, that these rates last mentioned were reciprocal switching rates made by the Burlington in connection

with the Rock Island and that they did not reflect the actual cost of the service performed.

The first contention of appellant is that the order of the commission is not responsive to the issues presented to the commission in two respects: First, because the commission states in the order that appellant complained of rates which were not, in fact, complained of at all; and second, because the commission in the order does not make a finding on the facts which appellant contends show the fifty-cent rate (a through rate) to be greater than the aggregate of intermediate rates and therefore in violation of section 40 of the act. In the first paragraph of its order the commission correctly states that it is alleged in appellant's complaint that the rate applicable from its plant and pit for the transportation of sand and gravel in car-load lots to the station of Ottawa and industries located within the switching district thereof on the Burlington is unreasonable, unduly prejudicial and unlawful. Later paragraphs of the order, referred to by appellant as showing that the order is not responsive to the issues before it, are:

"Complainant attacks the switching charge of the traction company of $6.30 per car on sand and gravel which applies on shipments originating on its line and interchanged at Siberling switch with the Burlington. This charge is absorbed by the Burlington on shipments destined to points on its line on which it receives a road haul. The Burlington also publishes a rate of twenty-five cents per ton from its point of connection with the traction company on traffic originating outside of the Ottawa switching district destined to points within the Ottawa switching district, and a rate of thirty-eight cents per ton for switching where traffic originates and is destined to points within the limits of the Ottawa switching district.

"The evidence also shows that there exists a joint through rate of fifty cents per ton on sand and gravel based on fifty tons per car, and it is these rates, namely, twenty-

five cents, thirty-eight cents, fifty cents and a switching charge of $6.30 per car, which are assailed by the complainant."

Appellant by its complaint did not "attack" or "assail" or "complain" of the rate of $6.30 per car or of the twenty-five-cent rate or the thirty-eight-cent rate, and, as pointed out by appellant, the commission was in error when it stated that appellant did complain of those rates. Under the complaint filed by appellant the commission could not have entered an order reducing or changing those rates. (*Alton and Southern Railroad* v. *Commerce Com.* 316 Ill. 625.) But it does appear from the order that the commission understood that appellant was complaining of the fifty-cent rate, and that it passed upon the complaint as to that rate and found that that rate was not shown to be unjust, unreasonable or unduly prejudicial. When the commission's order is considered in its entirety it clearly appears that the commission understood that it was the fifty-cent rate which was complained of and that the commission rendered its decision on the complaint made of that rate.

The paragraphs of the order of the commission relating to the allegation that the fifty-cent rate was in violation of section 40 of the act, in that it, a through rate, was greater than the aggregate of the intermediate rates, are as follows:

"Complainant further contends that the present rate of fifty cents is unlawful to the extent that it exceeds the combination of the switching rate of $6.30 applicable from complainant's plant to point of connection with the Burlington and the rates applicable on shipments originating outside the switching district of Ottawa from point of interchange with the Rock Island to industries on the Burlington in the Ottawa district. The majority of these rates are $2.70 per car.

"From the connection of the traction company at Ottawa to industries on the Burlington at Ottawa the following rates are published on sand and gravel, car-loads:

Twenty-five cents per ton of 2000 pounds applicable on traffic to or from points on connecting lines outside the switching district of Ottawa, Illinois, and thirty-eight cents per ton of 2000 pounds applicable on shipments received from connecting lines when originating at points within the switching limits of Ottawa, Illinois.

"The twenty-five-cent rate applicable on shipments from points outside the Ottawa switching district is in the nature of a proportional rate. It is well recognized that such rates cannot be used in determining 40th section violations. The thirty-eight-cent rate applicable on traffic originating within the Ottawa switching district, together with the $6.30 rate of the traction company, based on the average loading of fifty tons to a car, would produce a charge of $25.30 per car as against a total charge of $25 per car·under the present rate of fifty cents per ton. Therefore no violation of the 40th section exists."

The applicable provisions of section 40 of the act are as follows: "No common carrier subject to the provisions of this act shall charge or receive any greater compensation in the aggregate for the transportation of persons or of a like kind of property for a shorter than for a longer distance over the same line or route in the same direction within this State, the shorter being included within the longer distance, or charge any greater compensation as a through rate than the aggregate of the intermediate rates."

The finding and decision of the commerce commission are that the applicable intermediate rates applying to ship-ments from appellant's plant and pit to points in the Ottawa switching district are the rate of $6.30 a car to Siberling switch and the rate of thirty-eight cents a ton· ($19 a car) from that switch to any point in the switching district, and that since the compensation that would be received by the application of the intermediate rates ($25.30 a car) would be greater than the through rate of fifty cents a ton, ($25 a car,) there was no violation of the provisions of

section 40 by the fifty-cent rate. This finding and decision are in accordance with the evidence. Appellant says that it did not contend there was any violation of section 40 when the rate of $6.30 a car and the thirty-eight-cent rate were considered; that it contended the applicable intermediate rates were $6.30 a car and $3.15 a car, the latter rate being the predominant switching rate on the Burlington between the Rock Island and plants and industries in the Ottawa switching district. The commission found, and the evidence showed, that the $3.15 rate was a reciprocal switching rate published by the Burlington for traffic to and from the Rock Island, only, and did not reflect the cost of service performed. There was no showing that the $3.15 rate was ever applied or was ever published for or intended to apply to any shipment originating at appellant's plant and pit and destined to a point on the Burlington in the Ottawa switching district. The evidence, on the other hand, showed that that rate did not apply to any such shipment. The commerce commission by its order correctly stated appellant's contention as to why the fifty-cent rate violated section 40, and then held that the contention was without merit because the only applicable intermediate rates on shipments from appellant's plant and pit to points in the Ottawa switching district were the $6.30 rate and the thirty-eight-cent rate. There is no merit in appellant's contention that the commission by its order failed to pass upon its contention that the fifty-cent rate was in violation of section 40.

Appellant contends that the order of the commerce commission shows on its face that in considering evidence of comparative rates, introduced as bearing on the question of the reasonableness of the fifty-cent rate, the commission did not consider the similarity or dissimilarity of the operating and transportation conditions existing at the place where the comparative rates applied. In this connection it refers to a paragraph of the commission's order which is as follows:

"Complainant contends that the service involved under the assailed rate is of a switching character, and that the propriety of the said rates and charges can be ascertained only by comparing the same with rates and charges maintained for a similar service. Whether the transportation service rendered the complainant by the defendants be designated as a switching service or a line haul service is immaterial, as the controlling factor in the determination of this rate is whether it is unreasonable or otherwise unlawful."

The evidence shows, as appellant points out, that the movement of sand and gravel from appellant's plant within the Ottawa switching district was handled by switching crews and equipment, and that there is a clearly defined distinction between line haul transportation and switching transportation. This court has held that a similarity of conditions of operation must be shown before comparison of existing transportation charges can have probative value in determining what rates are reasonable. (*Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 335 Ill. 624.) The order of the commission does not, as appellant contends, show that this principle was rejected by the commission in this case. It is true, the commission stated that whether or not the movement of traffic from appellant's plant to points in the Ottawa switching district be called a switching movement or a line haul movement was immaterial.. It did not say, however, that it did not consider the showing that the movement was made by switching crews and equipment. That it did consider that fact is shown by its order in referring to the evidence most relied upon by appellant of charges made by the Burlington for switching cars to and from the lines of the Rock Island. The commission found that those charges were made on the basis of local reciprocal switching rates that did not reflect the cost of the service performed. The commission, in its order, states: "Complainant offered little evidence to prove the unreasonableness of the joint through rate of fifty

cents, relying principally upon comparisons of local reciprocal switching rates," and, after referring to the evidence of appellees, further states: "The record is complete in so far as a showing of operating and transportation conditions is concerned. However, no testimony was introduced showing the cost of the service, and but little evidence was introduced showing rates applied at other points for a similar transportation service. The commission is of the opinion that it would be improper to prescribe a rate based on a combination of switching charges using reciprocal switching charges that do not reflect the cost of the service as a factor or factors."

Appellant states, and it is no doubt true, that there is no such thing as establishing the intrinsic reasonableness or unreasonableness of a rate for transportation of commodities, and that the premise for finding a rate unreasonable or excessive is a finding that for similar operating and transportation conditions and a like quantum of transportation service to that involved under a rate complained of, the predominant and general or usual basis of charges maintained by carriers is less. In the instant case no rate was found to be unreasonable or excessive. Appellant complained that the rate was unreasonable and excessive, and the burden was on it to prove it to be so. (*Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 320 Ill. 214.) The commission in its order referred to the evidence introduced by appellant, and found it insufficient to show that the rate complained of was unreasonable and stated why it so found. It was unnecessary for it to make any other finding on that part of the case to support its order.

It is further contended by appellant that the findings of the commission in its order are contradictory, in that it finds that the switching rates of $2.70 and $3.15 a car published by the Burlington for switching between certain industries and plants in the Ottawa switching district and the Rock

Island do not reflect the cost of the service performed, and then also states that no testimony was introduced showing the cost of service. The commission was correct in stating that there was no evidence of cost of transportation service introduced in the case. There was absolutely no evidence showing or tending to show actual cost of transportation service. Henry Christianson, a witness for the Burlington, testified that the $2.70 rate and the $3.15 rate were reciprocal switching rates made with little regard to the cost of service; that reciprocal switching rates are made between two railroads on the theory that while one road will perform more switching for the other at a particular terminal, the other will perform the bulk of the switching at another common terminal reached by the two roads, "and it is felt that in the long run one hand washes the other;" that while the $3.15 rate more nearly approximated the cost of service performed under it than did the $2.70 rate, it did not "by any means reflect the cost of service." This evidence was not in anywise contradicted. There is no repugnancy in the findings of the commission in its order. While it is true that the tariff filed by the Burlington did not refer to the rates of $2.70 and $3.15 a car as reciprocal rates and did state that switching performed for the public or for other railroads must be considered revenue switching, the finding of the commission that those rates were local reciprocal switching rates and did not reflect the cost of service performed is supported by the evidence.

It is further contended by appellant that the commerce commission relied upon matters wholly foreign to the record, and upon mere contention, as a basis for its decision. In the order the commerce commission stated that the "Interstate Commerce Commission has frequently held that reciprocal switching charges are made without regard to the cost of the service and therefore may not be an accurate measure of a reasonable charge for a particular switching

service," and referred to and quoted from a decision of that commission in which it was stated that the charge for reciprocal switching is generally less than the cost of performing the service. It is contended that the commission, as shown by its order, treated these decisions and statements of the Interstate Commerce Commission as evidence. In *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com. supra,* we held that the statement of one tribunal of a particular fact in a case before it is no evidence in another controversy upon a different issue between different parties in another tribunal of the particular fact stated, and that the commissioners cannot act on their own information but must base their findings on evidence presented in the case. The commerce commission could not legally have treated the statements or decisions of the Interstate Commerce Commission as any evidence in this case, and it does not appear that it did so, since its finding that the reciprocal switching rates in this case did not reflect the cost of service performed thereunder is supported by uncontradicted evidence in the record, as we have shown above. The references in the order to the holdings and statements of the Interstate Commerce Commission may be considered as so much surplusage. At another place in its order the commission states that appellant introduced evidence of rates, established by the commission by an order in another case, for transportation from appellant's plant and pit to points in the Ottawa switching district on the Rock Island, and further states that in that case the commission "held that the rates assessed on the shipments involved therein were unreasonable to the extent they exceeded the combination of the sum of the reciprocal switching charges." Then in the order follows this statement: "Defendants stated that the record in the previous case was limited." It is contended that this last quoted statement from the order shows that the commission accepted mere contention as evidence and acted thereon in making its decision in this

case. Evidence of the rates established in the previous case for shipments from appellant's plant and pit to points on the Rock Island in the Ottawa switching district showed these rates to be less than the fifty-cent rate involved in this case, and it was introduced by appellant to show the unreasonableness of the rate complained of in this case. The commission in this case referred to that evidence, and held that it, when considered with the other evidence, failed to establish that the rate complained of in this case is unreasonable and excessive. The commission was not bound to follow its decision in the previous case, and we cannot agree with appellant that the order shows that the commission did not give the evidence of the rates established in that case due weight but ignored it on the statement of the defendants that the record in that case was limited.

In reviewing orders of the commerce commission in cases such as this, it is not the province of a court to put itself in the place of the commission, try the question anew and substitute its judgment for that of the commission. The court is limited to a consideration of whether the commission proceeded legally and acted within the scope of its authority, whether it made findings to support its decision, whether its findings and decisions find substantial support in the evidence, and whether constitutional rights have been infringed by the decision. (*Public Utilities Com.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 287 Ill. 412; *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 id. 412; *Business Men's Ass'n* v. *Commerce Com.* 337 id. 149; *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 id. 243.) The order of the commerce commission in this case is not unlawful or unreasonable. It contains sufficient findings to support the decision and is not clearly against the manifest weight of the evidence. The circuit court did not err in confirming the order.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*