(No. 35408.—

SERVICE PIPE LINE COMPANY, Appellant, *vs.* IRVIN A. RUDER *et al.,* Appellees.

*Opinion filed May 18, 1960.*

BARR and BARR, of Joliet, and CECIL L. HUNT, and WALTER B. HALL, both of Tulsa, Oklahoma, for appellant.

BISHOP, BURDETT, FALASZ & DOHERTY, of Chicago, (JOHN M. FALASZ, JOHN H. BISHOP, H. HOWARD SCHLUNTZ and ROBERT J. BURDETT, of counsel,) for appellees.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and HARRY R. BEGLEY, Special Assistant Attorney General, of Chicago, for *amicus curiae,* The Illinois Commerce Commission.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Service Pipe Line Company, a corporation engaged in the interstate transportation of oil, instituted this eminent domain action to acquire a perpetual easement in the defendants' land. The circuit court of Will County granted the defendants' motion to dismiss the action, and the plaintiff has appealed directly to this court. Ill. Rev. Stat. 1959, chap. 47, par. 12.

The plaintiff does no intrastate business in Illinois. Its pipe lines in this State transport crude oil from other States to refineries here, and to connecting systems that carry the oil eastward. It proposed to construct, on the defendant's land, a connection between its system and that of Texaco-Cities Service Pipe Line Company. The complaint alleges that the proposed connection would enable the plaintiff to serve additional refineries in this and other States, and would also increase the flexibility of deliveries to refineries in the Chicago area, which is said to be desirable against the chance of damage to one of the pipe lines.

Although the plaintiff is an interstate common carrier

under the Interstate Commerce Act and is subject to regulation by the Interstate Commerce Commission, it has no authority under Federal law to exercise the power of eminent domain. It has that power under State law, or not at all. The plaintiff is a public utility under the Illinois Public Utilities Act, which authorizes utilities to exercise the power of eminent domain when the project requiring condemnation is authorized by the Illinois Commerce Commission. (Ill. Rev. Stat. 1959, chap. 111⅔, pars. 10.3, 63.) The plaintiff, however, ignored the commission and filed its eminent domain complaint solely upon its own initiative. Baldly stated, its position in the trial court was that it can exercise the power of eminent domain where and when it sees fit, without supervision by any governmental authority, State or Federal.

To sustain this position, it has advanced an ingeniously constructed argument based upon its interpretation of Federal and State statutes. Section 3(4) of the Interstate Commerce Act (49 USC § 3(4),) contains the following provision: "All carriers subject to the provisions of this chapter shall, according to their respective powers, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines and connecting lines * * *." Section 59 of the Illinois Public Utilities Act authorizes public utilities to condemn private property in the following terms: "When necessary for the construction of any alterations, additions, extensions or improvements ordered or authorized under sections 50 or 58 or subdivision (a) of section 81 of this Act, any public utility may enter upon, take or damage private property in the manner provided for by the law of eminent domain." (Ill. Rev. Stat. 1959, chap. 111⅔, par. 63.) Section 50 empowers the Illinois Commerce Commission to order a utility to make additions, extension, repairs and improvements when, after a hearing had upon its own motion or upon a complaint, it finds that the security and

convenience of the utility's employees or the public, or the need for adequate service and facilities so require. Ill. Rev. Stat. 1959, chap. 111⅔, par. 50.

The plaintiff has argued that by reason of section 3(4) of the Interstate Commerce Act it "has an affirmative duty to make this interconnection," and that the State is precluded from exercising any administrative control over the interconnection for any purpose. Its position is that since Illinois permits all utilities, interstate as well as intrastate, to exercise the power of eminent domain upon authorization by the commission, and since under the Federal act the commission has no power to grant or refuse authority, an interstate pipe line must be permitted to condemn property without authorization from the commission. Otherwise, it asserts, the effect of these statutes would be that Illinois has granted the right of eminent domain to interstate carriers only on the unconstitutional condition that they surrender their federally granted right to be free from State supervision. "For itself, and for the entire crude oil pipeline industry," the plaintiff urged us to decide the issues thus presented.

Although the plaintiff has thus claimed a broad right to utilize the State's power of eminent domain without supervision by any governmental agency, it has also conceded in its reply brief and upon oral argument that there is no constitutional prohibition against State supervision to ensure that the public health and safety is protected. Its counsel agreed that the State, through its administrative agencies, may exercise what has been referred to in this case as a "prudential control" over interstate utility projects for which the power of eminent domain is to be employed.

We think it clear that this position is correct, and that the State's authority has not been completely preempted by Federal legislation. The decision of the United States Supreme Court in *City of Chicago* v. *Atchison, Topeka & Santa Fe Railway Co.* 357 U.S. 77, 2 L. ed. 2d 1174, is not

to the contrary. There the court invalidated an ordinance which provided that no license would issue for a vehicle engaged in transferring passengers between railroad stations within the city "unless the City Commissioner of Licenses first determined that public convenience and necessity required additional interterminal service." (357 U.S. at 80.) After referring to section 3(4), the court stated: "All we hold here, and all we construe the Court of Appeals as holding, is that the city has no power to decide whether Transfer can operate a motor vehicle service between terminals for the railroads because this service is an integral part of interstate railroad transportation authorized and subject to regulation under the Interstate Commerce Act. Cf. *Castle* v. *Hayes Freight Lines, Inc.,* 348 U.S. 61." (357 U.S. at 88-89.) In the case before us there is no issue related to the power of the State to exclude an interstate carrier. Furthermore, the power claimed by the plaintiff in this case would produce a more serious encroachment on State authority than that sustained in *Chicago* v. *Atchison, Topeka & Santa Fe Railway Co.* The two cases would be comparable only if Transfer had been held to have the right to condemn its own right of way between the railroad terminals, but of course there was no such holding.

We think also that sections 50 and 59 of the Public Utilities Act vest the State's supervisory authority in the Illinois Commerce Commission. The plaintiff has not submitted its proposed connection to the commission. As a result, it has not complied with a valid condition precedent to its right to exercise the power of eminent domain and is not entitled to maintain this action.

Since the plaintiff must fail in any case, we need not now decide whether section 3(4) of the Interstate Commerce Act, with its cryptic phrase, "according to their respective powers," is to be read with the sweep that the plaintiff asserts. Nor need we now fix the precise scope of the authority of the Illinois Commerce Commission. The

constitutional questions that lurk behind these matters of statutory construction have not yet emerged for decision, and indeed may never arise. The commission has had no opportunity to assert any jurisdiction, much less to determine the limits of its power. The State's firm policy of limiting its regulatory jurisdiction over interstate commerce within constitutional bounds has been manifested both by statute and by decision, (Ill. Rev. Stat. 1959, chap. 111⅔, par. 94; *St. Louis Connecting Railroad* v. *Blumberg,* 325 Ill. 387; *Hayes Freight Lines, Inc.* v. *Castle, 2* Ill.2d 58,) and we see no reason to predict that the commission will exceed the boundaries of its authority. Only if the commission asserts authority beyond that which it is conceded to have, will we have cause to consider some or all of the interesting questions that plaintiff has urged us to decide.

For the reasons here stated, the judgment of the circuit court of Will County is affirmed.

*Judgment affirmed.*