IOWA RCO ASSOCIATION, Plaintiff-Appellant, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—(NORTHERN PIPE LINE COMPANY OF DELAWARE, INC., Intervenor.)

Fourth District   No. 15878

Opinion filed August 6, 1980.

Pfeifer & Kelty, P. C., of Springfield (Thomas W. Kelty and Charles R. Hug, of counsel), for appellant.

William J. Scott, Attorney General, and Harold E. McKee and Stephen J. Mattson, both of Mayer, Brown & Platt, all of Chicago, William L. Fay, of Bellatti, Fay, Bellatti & Bone, of Jacksonville, and Frederick J. Hansen, of Northern Pipe Company of Delaware, Inc., of Wichita, Kansas (Hercules F. Bolos, Special Assistant Attorney General, and James E. Weging, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Pursuant to section 55 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 56), Northern Pipe Line Company of Delaware, Inc. (Northern), filed a petition with the Illinois Commerce Commission (Commission) on October 7, 1977, requesting a certificate of public convenience and necessity to construct and operate a 200-mile-long crude-oil pipeline running from Wood River, Illinois, to Pine Bend, Minnesota. The Commission granted the petition and Iowa RCO Association (RCO), the only objector at the Commission hearing, appealed to the circuit court of Greene County which entered an order affirming the Commission on October 23, 1979. RCO appeals that order.

■■ RCO asserts that the Commission erred because (1) Northern was not a "public utility" within the meaning of the Act and, therefore, not entitled to such a certificate, (2) the Commission failed to adequately address environmental issues, and (3) the Commission erred in ruling upon evidence concerning action of the Minnesota Energy Agency. We examine these contentions in the light of the rules that (1) the Commission order is deemed to be "prima facie reasonable" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72), and (2) the burden is on the party seeking to overturn the Commission order (RCO) to show the order to be in error. *Iowa-Illinois Gas & Electric Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 436, 442, 167 N.E.2d 414, 417. Accord, *Eagle Bus Lines, Inc. v. Commerce Com.* (1954), 3 Ill. 2d 66, 119 N.E.2d 915.

■■ The evidence at the Commission hearing showed the following facts to be undisputed. Companies affiliated with Northern owned and operated at Pine Bend, Minnesota, a refinery having a capacity of 127,000 barrels per day. The proposed pipeline would be 24 inches in diameter and would extend across Illinois in essentially a straight line through farmland. The purpose of the pipeline would be to send crude oil to the affiliated company's refinery and a nearby one owned by Ashland Oil Co. with other refineries in that area renting excess capacity. Refineries in the north central part of the country have in the past been dependent largely on Canadian crude oil, but Canada has not cut down upon permissible oil exports and announced a plan that will eventually eliminate all such exports.

The term "public utility" is defined in the pertinent part of section 10.3 of the Public Utilities Act as including:

"\* \* \* every corporation \* \* \* that owns, controls, operates or manages, within this State, directly or indirectly, *for public use,* any plant, equipment or property used or to be used for \* \* \*:

\* \* \*

e. the conveyance of oil or gas by pipe line." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 10.3.)

Plaintiff RCO contends that the pipeline was not shown to be "for public use" within the meaning of the Act because it would take only crude oil for companies affiliated with Northern and because it would provide only for interstate shipments. Plaintiff maintains that the proposed route was such that there could be no convenient terminal points in Illinois.

In arguing that Northern's proposed pipeline would not be for public use, RCO relies on *Roy v. Illinois Commerce Com.* (1926), 322 Ill. 452, 153 N.E. 648, *Austin Brothers Transfer Co. v. Bloom* (1925), 316 Ill. 435, 147 N.E. 387, *Springfield Gas & Electric Co. v. City of Springfield* (1920), 292 Ill. 236, 126 N.E. 739, *aff'd* (1921), 257 U.S. 66, 66 L. Ed. 131, 42 S. Ct. 24, *State Public Utilities Com. v. Bethany Mutual Telephone Association* (1915), 270 Ill. 183, 110 N.E. 334, *Illinois Highway Transportation Co. v. Hantel* (1944), 323 Ill. App. 364, 55 N.E.2d 573, and *Central Trust Co. v. Calumet Co.* (1931), 260 Ill. App. 410. Each differs materially from the instant case. In *Roy,* a Commission order granting a certificate of convenience and necessity for a railroad was reversed because the evidence showed that it was not needed and adequate service was given by a nearby line. A certificate of convenience and necessity was held to be required for a taxi driver who indiscriminately picked up passengers along a route between cities in *Austin Brothers Transfer Co.* But such certificates were held to be unnecessary for an association furnishing telephone service only to its members in *Bethany Mutual Telephone Association* and unnecessary for a bus operator under contract with an entity operating a factory to transport its employees in *Illinois Highway Transportation Co.* The Public Utilities Act was held not to apply to the ownership and operation by a municipality of an electric generation and distribution system in *Springfield Gas & Electric Co.* In *Central Trust Co.,* a landlord leasing property to a public utility was held not to be protected by mortgage foreclosure restrictions statutorily granted to public utilities.

Plaintiff RCO relies upon language in the foregoing cases stating that to be a public utility, an entity must be under a duty to serve the public, treating each user alike. Here testimony was presented that several nonaffiliated companies wished to use the pipeline and that Northern would furnish service to them. Here, unlike in the cited cases except *Roy* and *Central Trust,* Northern, the entity whose status is in issue, claims to be a public utility. It would be operating in interstate commerce and

would be required under the Interstate Commerce Act (49 U.S.C. §1(4) (1976)) to furnish nondiscriminatory service to its nonaffiliated users and others wishing to do so. Because of its claim to be subject to the provisions of the Public Utilities Act it would be estopped to deny that, subject to preemptive Federal regulations, it was also required to furnish non-discriminatory service pursuant to the provisions of section 38 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 38). A sufficient showing was made that the pipeline would be for a public use.

■■ The fact that the use of the pipeline would be almost entirely, if not entirely, interstate did not keep *Northern* from being subject to the provisions of the Public Utilities Act.

In *Service Pipe Line Co. v. Ruder* (1960), 19 Ill. 2d 332, 167 N.E.2d 419, a corporation seeking to build and operate a wholly interstate pipeline filed a petition in an Illinois circuit court seeking to condemn rights of way. The circuit court dismissed the complaint, and the supreme court affirmed on appeal. It noted that the corporation was an interstate carrier subject to regulation by the Interstate Commerce Commission but having no Federal right to condemn for right of way. It also described the corporation as being a public utility within the meaning of the Public Utilities Act but stated that such a utility had power to condemn under that act only after first obtaining a certificate of convenience and necessity, as had been done here. Northern relies upon the case as precedent for the Commission's ruling here. Plaintiff RCO maintains that the supreme court only decided that the corporation had no power to condemn and any implication that the corporation could have obtained a certificate of convenience and necessity from the Illinois Commerce Commission as a public utility was merely dictum.

Plaintiff RCO takes the position that the *Ruder* court made no decision as to whether the pipeline corporation was within the purview of the Public Utilities Act because the parties had so stipulated. In the posture of the case, the interests of the corporation was to show that it was not covered by the Act. Yet the opinion indicates that it had agreed that State administrative agencies "may exercise what has been referred to in this case as a 'prudential control' over interstate utility projects for which the power of eminent domain is to be employed." The court then stated, "We think it clear that this position is correct, and that the State's authority has not been completely preempted by Federal legislation." (19 Ill. 2d 332, 335, 167 N.E.2d 419, 421.) We agree that the determination of whether that pipeline corporation was a "public utility" within the meaning of the Act was not necessary to its decision, but the dictum was strong and clearly stated.

■■ We agree that here the interstate nature of Northern would not prevent it from being a public utility within the meaning of the Public

Utilities Act. The commerce clause (U.S. Const., art. I, §8) does not of itself prevent some reasonable regulation by a State of interstate commerce within its borders. (*State of California v. Thompson* (1941), 313 U.S. 109, 85 L. Ed. 1219, 61 S. Ct. 930.) As stated in *Ruder*, the exercise of the power of eminent domain by a pipeline carrier is governed only by State law. The Federal Government has not preempted the field even as regards to such interstate lines. Sections 55 and 59 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, pars. 56 and 63) govern the grant of that power. The Commission could properly issue the instant certificate to Northern.

We dispose of the other issues summarily.

The evidence as to the environmental impact of the pipeline was conflicting. Roger L. Williams, president of Northern, testified as to the company's plans for construction and safety precautions that would be taken. He showed that Northern had given serious consideration to the matter. An expert, testifying for RCO answered hypothetical questions in a manner indicating Northern's plans to be insufficient and incomplete. Testimony for the two sides disputed whether the high sulfur crude oil expected to be carried would likely cause a leak. The Commission supported its decision on the environmental issues with detailed findings. They were neither unreasonable nor contrary to the manifest weight of the evidence.

■■ During Williams' testimony, he was asked about the findings of the Minnesota Energy Agency and he stated it had issued a certificate of necessity finding the pipeline to be "absolutely needed." RCO's attorney was not permitted to ask Williams if the MEA hearing officer had made a recommendation contrary to the agency. RCO maintains that admission of evidence of the Minnesota administrative decision without admission of the whole record was error. The issue was waived because it was not raised even indirectly in RCO's petition before the Commission for rehearing. (*City of Granite City v. Illinois Commerce Com.* (1950), 407 Ill. 245, 95 N.E.2d 371.) Moreover, the decision was not binding upon the Commission (*Moline Consumers Co. v. Illinois Commerce Com.* (1933), 353 Ill. 119, 187 N.E. 161) and there is no indication that the Commission gave substantial weight to it. The ruling did not deprive plaintiff of a fair hearing.

We affirm.

Affirmed.

TRAPP and WEBBER, JJ., concur.