BUSINESS AND PROFESSIONAL PEOPLE FOR THE PUBLIC INTEREST *et al.*, Petitioners, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.

First District (5th Division)   No. 1—95—0937

Opinion filed May 10, 1996.

Robert L. Jones, Jr., Susan L. Satter, Howard A. Learner, and Alexander Ewing, all of Chicago, for petitioners.

Raymond F. Simon and Gregory J. Simon, both of Simon & Spitalli, Pamela B. Strobel, Thomas J. Russell, and Paul F. Hanzlik and John L. Roberts, both of Hopkins & Sutter, all of Chicago, for respondent.

JUSTICE COUSINS delivered the opinion of the court:

The petitioners, Business and Professional People for the Public Interest and Citizens Utility Board, appeal from an order of the Illinois Commerce Commission (Commission) which found that Commonwealth Edison (Edison) had established the prudence of its cost of fuel for inclusion in Edison's rate base as required under section 9—220 of the Public Utilities Act (Act) (220 ILCS 5/9—220 (West 1992)). In the Commission proceedings, petitioners contended that Edison should bear the costs of four unplanned temporary shutdowns at Edison's nuclear plants that Edison's employees had caused through various errors. Petitioners claimed that these errors were conclusive proof that the costs incurred were not "prudent" as required under section 9—220. However, the Commission held, "Edison cannot be faulted for the human error of its employees unless the evidence shows that Edison failed to adequately hire and train the proper employees." Petitioners appeal from the Commission's order allowing Edison full recovery of its fuel costs, claiming that: (1) the order violates section 9—220 by placing the burden of proof on petitioners instead of Edison; (2) the Commission misconstrued the "prudence of fuel costs" standard of section 9—220 by substituting an extraneous investigation into the adequacy of Edison's hiring and training; (3) the Commission's interpretation of section 9—220 is contrary to basic principles of agency law and is unfair to consumers; and (4) the order does not contain findings or analysis sufficient to allow informed judicial review.

We affirm.

BACKGROUND

■ On December 2, 1990, the Commission commenced its annual reconciliation proceedings to reconcile Edison's fuel costs for the year of 1989 as governed by section 9—220:

"[T]he Commission may authorize the increase or decrease of rates and charges based upon changes in the cost of fuel used in the generation or production of electric power, changes in the cost of purchased power, or changes in the cost of purchased gas through the application of fuel adjustment clauses or purchased gas adjustment clauses. *** Cost shall be based upon uniformly applied accounting principles. Annually, the Commission shall initiate public hearings to determine whether the clauses reflect actual costs of fuel, gas, power, or coal transportation purchased to determine whether such purchases were prudent, and to reconcile any amounts collected with the actual costs of fuel, power, gas, or coal transportation prudently purchased. In each such proceeding, the burden of proof shall be upon the utility to establish the prudency of its cost of fuel, power, gas, or coal transportation purchases and costs." 220 ILCS 5/9—220 (West 1992).

The Commission held 14 hearings from June 5, 1991, to February 2, 1994, to determine the prudence of Edison's 1989 fuel costs. On January 15, 1992, Citizens Utility Board filed a petition to intervene, and on February 4, 1992, Business and Professional People for the Public Interest filed its petition to intervene.

The petitioners contested fuel costs that Edison sustained from four unplanned outages at 2 of its 12 nuclear plants. The details of the four outages were: (1) a technician deenergized the wrong circuit breaker, causing a two-day outage; (2) an employee or contractor improperly installed a screw, causing a leak that resulted in a 19-day shutdown; (3) an employee or contractor installed a defective turbine test switch that caused a two-day outage; and (4) an admitted "management deficiency" when a reactor was not pressurized correctly caused a two-day extension of a planned five-day maintenance period. The petitioners contended that these negligent acts resulted in imprudent and excessive replacement fuel costs. Edison responded that it had been prudent because it had properly managed its facilities with adequate hiring and training for its employees.

On January 5, 1995, the Commission issued its order approving the reconciliation of costs submitted by Edison. The order outlined the individual outages and stated that an Edison witness "contended that the [circuit breaker] shutdown was not due to a lack of preventive maintenance and that the outage was solely due to human error." Under the heading "Commission Conclusions," the order stated:

"Edison has presented the testimony of Mr. Galle and Mr. Wallace regarding the prudent operations of its nuclear plants in 1989. *** [T]he Commission is of the opinion that Edison has made a *prima facie* showing that it operated its nuclear units prudently during the 1989 reconciliation period."

The Commission concluded:

> "With respect to the specific forced outages complained of by BPI, the Commission has examined the record and concludes that there is no showing of imprudence relating to the four outages previously described. \*\*\* The Commission has consistently maintained that Edison cannot be faulted for the human error of its employees unless the evidence shows that Edison failed to adequately hire and train the proper employees. There is no evidence that Edison's training or hiring was improper. Thus, human error under the circumstances described in this case was excusable. In addition, there is no evidence in the record to show that Edison's 'management deficiency' was a result of Edison's failure to adequately hire or train its management staff."

The Commission denied the petitioners' request for reconsideration, and on March 27, 1995, the petitioners appealed directly to this court pursuant to section 10—201 of the Act. 220 ILCS 5/10—201 (West 1992).

OPINION

I

■ The Act defines the Commission's powers and duties in setting the rates a public utility may charge its customers. Because the Commission is an administrative agency, we will reverse its orders only if the Commission's findings are not supported by substantial evidence based on the record; the Commission acted outside the scope of its statutory authority; the Commission issued findings in violation of the state or federal constitution or law; or the proceedings or the manner in which the Commission reached its findings violates the state or federal constitution or laws, to the prejudice of the appellant. 220 ILCS 5/10—201(e)(iv)(A) through (e)(iv)(D) (West 1992); *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 120-21, 651 N.E.2d 1089 (1995) (*Citizens I*). On appeal from an order of the Commission, its findings of fact are considered *prima facie* true; its orders are considered *prima facie* reasonable; and the burden of proof on all issues raised in an appeal is on the appellant. *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 11, 643 N.E.2d 719 (1994).

■ Petitioners first claim that the order violates section 9—220 by placing the burden of proof on petitioners instead of Edison. To support their contention, petitioners cite language on page six of the order where the Commission states, "There is no evidence that Edison's training or hiring was improper." However, on page five, the order states that "the Commission is of the opinion that Edison has

made a *prima facie* showing that it operated its nuclear units prudently during the 1989 reconciliation period." Thus, the Commission first held that Edison had met its burden of proof, and only later did the Commission add that Edison's evidence had been unrebutted. We find no indication in the order that the Commission improperly set the burden of proof on petitioners.

Although petitioners cite *Citizens Utility Board v. Illinois Commerce Comm'n*, 276 Ill. App. 3d 730, 658 N.E.2d 1194 (1995) (*Citizens III*), and *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 117 Ill. 2d 120, 510 N.E.2d 865 (1987), those cases do not support their claim. In *Citizens III*, we reversed the Commission's order because "the Commission based its approval of the capital structure primarily on its rejection of the evidence of manipulation [petitioner] presented." *Citizens III*, 276 Ill. App. 3d at 747. In the instant matter, the Commission based its approval on evidence by Edison that went unrebutted, rather than on its rejection of any evidence offered by the petitioners. In *Hartigan*, the supreme court reversed the Commission because "the Commission relied on the presumption of reasonableness, rather than an affirmative showing of reasonableness." *Hartigan*, 117 Ill. 2d at 136. *Hartigan* specifically disapproved "[t]he mere presentation by a utility of the costs it incurred." *Hartigan*, 117 Ill. 2d at 133. In this case, the Commission relied on Edison's *prima facie* showing rather than any presumption, and Edison presented testimony of its hiring and training procedures to justify the reasonableness of its costs. Because this case does not involve the mere presentation by Edison of its costs, *Hartigan* is inapposite.

■ Petitioners also claim that Edison's affirmative showing was inadequate because Edison's witnesses testified on its hiring and training practices for fewer than seven transcript pages—three on direct examination and four on cross-examination by the Commission's staff. We hold this "page-length" argument to be completely inadequate for the petitioners to meet their burden of proof on appeal and overcome the *prima facie* veracity of the Commission's findings.

■ Lastly, petitioners contend that the Commission's conclusion of Edison's general prudence had no connection to the individual outages at issue. However, Edison, by proving its general prudence, established a *prima facie* case that it was not responsible for instances of individual employee error. The Commission then examined the record to conclude that the outages did not rebut Edison's demonstration of its prudence, but this action did not shift the initial burden of proof from Edison.

## II

■ Petitioners next argue that the Commission misconstrued the

"prudence of fuel costs" standard of section 9—220 by substituting an extraneous investigation into the adequacy of Edison's hiring and training. Generally, the Commission's decisions are entitled to great deference, as being the judgment of a tribunal appointed by law and informed by experience. *Citizens I*, 166 Ill. 2d at 131. While the Commission's interpretation of statutory standards is entitled to deference, we are not bound by the Commission's interpretation of law. *Citizens I*, 166 Ill. 2d at 121.

■ The Commission determined Edison's prudence by the adequacy of Edison's hiring and training of its employees, and the Commission examined the particular 1989 outages and the human errors involved to determine if they indicated deficiencies in Edison's management practices. While petitioners contend that this definition of prudence defies common sense, we believe that this definition is the most sensible interpretation of the statute. Two of the dictionary definitions of "prudence" are "sagacity or shrewdness in management of affairs" and "skill or good judgment in the use of resources." Webster's Ninth Collegiate Dictionary 949 (1985). When determining employee management practices, the most efficient management of resources will minimize the *sum* of (1) the costs of human error, and (2) the costs of preventing human error. The latter includes extra salary to hire more qualified employees, increased training for employees, and additional management personnel for greater oversight. When the sum of costs in (1) and (2) is minimized, the utility will be able to provide its service for the least possible cost to consumers. Thus, a utility at maximum efficiency will still encounter costs from human error. In setting rates, the Commission must allow the utility to recover costs prudently and reasonably incurred. 220 ILCS 5/1—102(a)(iv) (West 1992); *Citizens I*, 166 Ill. 2d at 121. The Commission's definition of an ambiguous statute is entitled to deference, and we believe the Commission's interpretation of prudence is logical and supported by the parameters of the statute.

■ Petitioners claim that the Commission's standard for prudence would fail to meet federal law requirements to ensure maximum economies in purchases which affect power rates. See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 171 Ill. App. 3d 948, 958, 525 N.E.2d 1053 (1988). However, as we described above, efficient hiring and management will provide maximum economies in a utility's operations by allowing an efficient amount of error to occur. Petitioners also argue that Edison could not engage in uneconomic error prevention because Edison would be unable to prove the reasonability of its operating costs to establish a rate increase. See 220 ILCS 5/9—201(c) (West 1992); *Citizens III*, 276

Ill. App. 3d at 741. Although true, this contention does not contradict our conclusion that reasonable operating costs should include employee errors which management cannot reasonably prevent. See *Citizens I*, 166 Ill. 2d at 126 (prudently incurred operating expenses have traditionally been recoverable from ratepayers).

■ Petitioners next rely on tort principles in which the employer is held responsible for all acts of its agents. However, for third-party tort actions, an employer purchases insurance and adds that cost into the price of its product—or into its base rate in Edison's case—as a prudent cost of doing business. Other businesses must likewise factor a reasonable amount of employee error into their costs as an unavoidable expenditure of business, and petitioners' position that no Edison employee may commit any error is not a just way to compensate Edison and its investors for its performance and thus is not a reasonable interpretation of the statute. Those cases that have disallowed utility costs have focussed on management planning and decision-making, not on individualized circumstances of human error as in the outages in this matter. See *United Cities*, 163 Ill. 2d at 31 (utility used outdated allocation data in projecting demand). Although the petitioners rely heavily on *Business*, that case also directed its inquiry into the prudence of management decisions, and we stated, "The Commission found that a reasonable person would not have forecast a 60% capacity factor for La Salle 1 in 1983 *given what Edison's management knew or should have known at that time.*" (Emphasis added.) *Business*, 171 Ill. App. 3d at 959. Though petitioners argue that they are not punishing Edison for all its mistakes because not all Edison's mistakes will have costs, the petitioners cannot justify punishing Edison for any mistakes where management has directed matters responsibly.

■ Petitioners also claim that the Commission's interpretation of prudence will render the statute a nullity by excusing all possible acts by a utility. However, management actions entail a tremendous range of activities: purchasing, oversight, and preventive maintenance, as well as hiring and training. Management may be held responsible for any action that is amenable to planning and therefore allows the use of sound judgment. In *Business* and *United Cities*, this court and the supreme court disallowed costs where the utility's management did not act prudently. A utility may be held responsible for any deficiency in its judgment, and we conclude that petitioners' claim is baseless.

Lastly, petitioners contend that it would be "enormously burdensome" to investigate employees involved with shutdowns and address questions such as when was the employee hired, what training ses-

sions has the employee attended, and what are the contents of the employee's personnel file. However, we do not believe the Commission, or any intervenors, would face an impossible task in determining whether better hiring, training, or oversight could have prevented an accident from human error. Thus, we approve of the Commission's definition of "prudent" and find that the Commission has reasonably interpreted the statute.

## III

■ Petitioners also contend that the Commission's interpretation of section 9—220 is contrary to basic principles of agency law and is unfair to consumers. Petitioners claim that the Commission's policy will not sufficiently deter future negligence and is also unfair because consumers are paying costs that are not a necessary part of generating electricity. However, as we outlined above, the Commission can withhold rate increases until Edison establishes the optimal amount of management and training to prevent human error. Moreover, a small amount of human error is an unavoidable cost of any human endeavor. As to determining that optimal amount of hiring and training costs to reduce human error, we do not approach the same level of competence to second-guess decisions of the Commission in this case. See *Citizens Utility Board v. Illinois Commerce Comm'n*, 275 Ill. App. 3d 329, 342, 655 N.E.2d 961 (1995) (*Citizens II*). It was never intended that courts should interfere with the functions and authority of the Commission so long as the order demonstrates sound and lawful analysis of the problems encountered. *City of Chicago v. Illinois Commerce Comm'n*, 264 Ill. App. 3d 403, 409, 636 N.E.2d 704 (1993). We believe that the order has provided a sound and lawful analysis that promotes efficiency and the best interests of consumers, and we decline to interfere with the Commission's decision.

## IV

■ Lastly, petitioners claim that the order does not contain findings or analysis sufficient to allow informed judicial review. The Commission need not make findings on every issue of fact, but it must state the facts essential to its rulings in a manner that enables this court to intelligently review the decision. *Citizens III*, 276 Ill. App. 3d at 743.

We conclude that the Commission has provided sufficient facts for this court to review its decision. In a similar case, the supreme court stated that "[t]he Commission's order summarized and reviewed the evidence and arguments presented by both sides. and, in its conclusion, it responded to each of [appellant's] reasons for opposing

Staff's proposed adjustment." *United Cities*, 163 Ill. 2d at 29. In this matter, the Commission identified the petitioners' contentions, its analysis of Edison's practices and each of the outages at issue, and the law that it applied to the situation to reach its conclusions. Although the Commission did not make detailed findings on each outage or on Edison's management practices, the Commission established the essential facts to allow informed review by this court. See *Citizens III*, 276 Ill. App. 3d at 743.

For the foregoing reasons, the order of the Commission is affirmed.

Affirmed.

McNULTY, P.J., and GORDON, J., concur.