ILLINOIS-AMERICAN   WATER   COMPANY,   Petitioner-Appellant,   v.
ILLINOIS COMMERCE COMMISSION, Respondent-Appellee.

Third District    No. 3—00—0444

Opinion filed May 18, 2001.—Modified on denial of rehearing July 12, 2001.

Boyd J. Springer (argued) and David J. Rosso, both of Jones, Day, Reavis & Pogue, of Chicago, and Sue A. Schultz, of Illinois-American Water Company, of Belleville, for appellant.

James E. Ryan, Attorney General, of Chicago (James Weging (argued), Special Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE HOMER delivered the opinion of the court:

Petitioner Illinois-American Water Company (Illinois-American) appeals a decision of the Illinois Commerce Commission (Commission) in a case Illinois-American initiated under the Public Utilities Act (Act) (220 ILCS 5/1—101 et seq. (West 1998)). Illinois-American sought permission to merge with Northern Illinois Water Corporation (Northern Illinois) and to recover certain merger costs from its rate-payers. While approving the merger, the Commission held that only costs directly related to the provision of service could be recovered from ratepayers. We affirm.

## FACTS

Illinois-American filed an application in 1999 seeking approval of its merger with Northern Illinois. Each utility was a subsidiary of American Works Company, Inc. (American Works), a holding company whose water utility subsidiaries serve more than 10 million people in 23 states. Through the Commission's order in docket No. 99—0093 (1999), the merger was approved. Prior to the merger, Illinois-American served approximately 146,000 customers in Peoria, Pekin, Cairo and Alton. Northern Illinois served 62,000 customers in Champaign, Streator, Sterling and Pontiac.

Illinois-American alleged that the merger was undertaken for the sole purpose of benefitting its consumers through cost savings and efficiencies. Evidence produced by Illinois-American projected a savings to Illinois-American consumers of $21,262,234 for the first 10 years following the merger. The majority of the savings, $13,497,857, was to be realized from a reduction in labor of 20 employees.

In order to realize the merger savings, Illinois-American alleged that it would incur $2,218,725 in expenses and desired to pass these costs on to its ratepayers. Specifically, Illinois-American requested $2,085,842 in employee transition costs, $40,000 in regulatory ap-

proval costs and $92,883 in communications costs. According to the proposal advanced by Illinois-American, these costs would be set off from the alleged consumer savings through a subsequent ratemaking scheme. In this regard, Illinois-American stated that it planned to initiate a general rate case based on a 2001 future test year. Accordingly, the alleged merger savings would be reflected in data used to establish or reaffirm the reasonableness of rates paid by ratepayers following the merger.

Pursuant to the Commission's rules of practice (83 Ill. Adm. Code pt. 200 (2001)), the staff of the Commission played an integral part in the proceedings below. The staff agreed that the merger should be approved, but determined that all of the savings and none of the costs proposed by Illinois-American should be passed on to the ratepayers. According to the staff, the costs to be incurred in order to accomplish the merger are not costs of service or costs of operation of the water and sewer business. The staff maintained that the merger costs were to be incurred in order to effectuate a change in ownership of Illinois-American and not as a result of the utility's operational functions.

A hearing examiner for the Commission entered a proposed order in which he also concluded that the merger should be approved. The hearing examiner, however, rejected the staff's position that all merger costs should be disallowed. He proposed that the costs should be netted against merger savings to the extent that the costs are incurred in order to realize the savings. Nevertheless, the hearing examiner's proposed order rejected Illinois-American's claim for pension costs ($1,030,000), regulatory costs ($40,000), and employee separation and relocation costs ($585,520). As a result, the hearing examiner's estimation of the costs Illinois-American should be allowed to recover was $563,205 (stock plan costs of $470,322 and communication costs of $92,883).

The Commission's final order adopted the staff's position in full and rejected the hearing examiner's conclusion that stock plan costs of $470,322 and communication costs of $92,883 should be recovered from ratepayers. Consequently, Illinois-American was ordered by the Commission to pass on all of the merger savings and none of its merger costs to its consumers.

Illinois-American now appeals. Other facts relevant to the appeal will be introduced as they become necessary to the discussion.

## SCOPE OF REVIEW

On appeal from the Commission, this court's review is limited to considering whether: (1) the Commission acted within its authority; (2) state or federal constitutional rights have been infringed; (3) the

decision is supported by substantial evidence; and (4) adequate findings were made to support the decision. *Lakehead Pipeline Co. v. Illinois Commerce Comm'n*, 296 Ill. App. 3d 942, 949, 696 N.E.2d 345, 350 (1998). The Commission's findings and conclusions regarding factual questions are to be held *prima facie* true, and Commission rules, orders and decisions are to be considered *prima facie* reasonable. *People ex rel. O'Malley v. Illinois Commerce Comm'n*, 239 Ill. App. 3d 368, 376, 606 N.E.2d 1283, 1289 (1993). The burden of proof on all issues raised on appeal rests with the appellant. 220 ILCS 5/10—201(d) (West 1998); *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 11, 643 N.E.2d 719, 725 (1994).

## ANALYSIS

The sole issue presented by this appeal is whether the Commission properly denied Illinois-American recovery of the costs that it requested from its ratepayers. Illinois-American's three principal arguments for reversing the Commission's decision are: (1) that the Commission departed from its past decisions by rejecting recovery of the costs; (2) that the Commission made insufficient findings to support informed review by this court; and (3) that the Commission infringed Illinois-American's right to equal protection under the fourteenth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

■ We give great deference to decisions of the Commission because they are judgments of a tribunal appointed by law and informed by experience. *United Cities*, 163 Ill. 2d at 12, 643 N.E.2d at 725. Commission orders have no *res judicata* effect in subsequent proceedings. *Lakehead Pipeline*, 296 Ill. App. 3d at 956, 696 N.E.2d at 354. This is true because the Commission is not a judicial body, but a regulatory body, and as such it must have the authority to address each matter before it freely, even if the matter involves issues identical to a previous case. *Lakehead Pipeline*, 296 Ill. App. 3d at 956, 696 N.E.2d at 354-55. If the Commission drastically departs from past practices, however, its decision is entitled to less deference. *Lakehead Pipeline*, 296 Ill. App. 3d at 956, 696 N.E.2d at 354-55.

■ This case involves the application of a relatively new section of the Act, section 7—204, which specifically addresses utility reorganization and which has only been in effect since April 1997. See 220 ILCS 5/7—204 (West 1998). Even if the Commission's order here is a departure from decisions made prior to this amendment of the Act, it is, nevertheless, squarely in line with two very recent Commission orders—*Merger of SBC Communications, Inc. & Ameritech Corp.*, Il-

linois Com. Comm'n No. 98—0555 (September 23, 1999) (*SBC Communications*), and *Merger of GTE Corp. & Bell Atlantic Corp.*, Illinois Com. Comm'n No. 98—0866 (October 29, 1999) (*GTE*)—each of which was decided under this new provision. The text of the section is as follows:

> "(c) The Commission shall not approve a reorganization without ruling on: (i) the allocation of any savings resulting from the proposed reorganization; and (ii) whether the companies *should be allowed to recover any costs* incurred in accomplishing the proposed reorganization and, if so, the amount of the costs eligible for recovery and how the costs will be allocated." (Emphasis added.) 220 ILCS 5/7—204(c) (West 1998).

■ In *SBC Communications* and *GTE*, the Commission distinguished between operational and transactional costs associated with mergers and stated that the former and not the latter are recoverable from ratepayers. Transactional costs are those costs and expenses that are incurred in connection with the merger. *Amendatory Order on Rehearing in Merger of SBC Communications, Inc. & Ameritech Corp.*, Illinois Com. Comm'n No. 98—0555, slip op. at 7 (November 15, 1999) (*SBC Communications Rehearing*). Operational costs are those that are directly associated with the utility's provision of service. *SBC Communications*, slip op. at 148. In the words of the Commission, "it is the stockholders that should pay for the business end of the deal, not the ratepayers." *GTE*, slip op. at 42.

It is apparent that the Commission is afforded great discretion under section 7—204 as to whether a utility should be allowed to recover merger costs at all. In *GTE*, the Commission recognized this fact and stated "while the [Act] *** on its face seem [*sic*] to contemplate the possibility of collecting costs incurred solely as a result of the merger, it also grants the Commission discretion to find that such costs should not be recovered." *GTE*, slip op. at 42. Considering this discretion, along with the deference that we must give the Commission as the agency charged with interpreting the Act (see *King v. Industrial Comm'n*, 189 Ill. 2d 167, 171, 724 N.E.2d 896, 898 (2000)), we cannot say that this distinction between operational and transactional costs is unreasonable. We agree that the ratepayers should only be responsible for those costs that are directly related to the utility's provision of service. Accordingly, we hold that the distinction drawn by the Commission is a reasonable one.

■ We will now address the findings made by the Commission regarding each individual cost sought by Illinois-American. The employee transition costs of $2,085,842 consisted of $585,520 in separation and relocation costs, $470,322 in stock plan costs and $1,030,000

in pension conversion. The separation and relocation costs, along with the regulatory approval costs of $40,000, which were rejected by the Commission here were also specifically rejected in *SBC Communications*. *SBC Communications Rehearing*, slip op. at 7. As in *SBC Communications*, in the instant case the Commission found that these costs were incurred solely to effectuate a change in the utility's ownership.

Likewise, the Commission rejected Illinois-American's claim for stock plan costs and pension conversion costs. The stock plan costs would be incurred as a result of Illinois-American's decision to discontinue the Northern Illinois's employees' stock plan and represent proposed disbursements for past earnings. The pension plan conversion costs would stem from Illinois-American's decision to convert the former Northern Illinois's employees' pension plan from the Employee Retirement Income Security Act (29 U.S.C. § 1001 *et seq.* (1994)) method of calculation to another method. Under each method, the total pension cost would be the same. Lastly, communications costs of $92,883 would accrue as a result of Illinois-American's desire to provide its new ratepayers (former Northern Illinois customers) with information such as instructions on how to obtain customer service and a description of payment options. We agree with the Commission that each of these costs bears no direct relationship to Illinois-American's provision of service. Therefore, recovery of each cost was properly rejected.

Illinois-American also raises an equal protection argument, claiming that it is being treated differently than other companies without a reasonable justification, *i.e.*, a justification that bears a rational relationship to a legitimate purpose. See *In re Adoption of C.D.*, 313 Ill. App. 3d 301, 311, 729 N.E.2d 553, 561 (2000). As indicated above, since the enactment of section 7—204, it is apparent that the Commission has endeavored to implement a uniform application of the provision. Accordingly, Illinois-American is unable to prove the disparate treatment necessary to sustain an equal protection challenge. See *People v. Porter*, 141 Ill. App. 3d 208, 215, 490 N.E.2d 47, 52 (1986).

Having carefully considered the parties' remaining arguments, we find further discussion unnecessary.

For the reasons stated above, the judgment of the Illinois Commerce Commission is affirmed.

Affirmed.

BRESLIN and HOLDRIDGE, JJ., concur.